**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No.  4:18-CR-215-CDP-NAB |
| ) | |
| SHANNON RENEE BRADLEY, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

The above matter was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b).  Defendant Shannon Bradley is charged along with co-defendant Jacob Brewer in two counts in an indictment.  Count one charges Bradley with conspiracy to distribute and to possess with the intent to distribute a mixture or substance containing detectable amounts of heroin and fentanyl with death resulting in violation of 21 U.S.C. §841(a)(1) and 18 U.S.C. §846.  Count two charges Bradley with distribution of a mixture or substance containing a detectable amount of heroin, with serious bodily injury resulting in violation of 21 U.S.C. §841(b)(1)(C).

On August 29, 2018 Bradley filed a Motion to Suppress Statements [Doc. 40].  The Government filed a response on September 12, 2018 [Doc. 48].  An evidentiary was held on October 24, 2018.  Bradley was represented by counsel William Margulis, the Government was represented by James Delworth.

The Government presented the testimony of Detective Leon Burton and four exhibits. The defendant's counsel cross-examined the witness for the Government, but did not present

evidence on Bradley's behalf.  For the reasons set forth below, the undersigned recommends that Defendant's motion to suppress statements be denied.

## FINDINGS OF FACT

Detective Burton has worked for the multicounty narcotics and violent crimes enforcement unit for two years, he's attached there from the City of Union Missouri where he's worked for 23 years.  He was a patrolman for 12 years and has been a detective for about 11 years.  Having observed the detective's testimony and demeanor, the undersigned finds Burton to be credible.  Detective Burton testified about his investigation into the overdose death of AC. His investigation led him to determine that Shannon Bradley and Jacob Brewer may have distributed the drugs to AC, resulting in her overdose.

On October 25, 2018 law enforcement officers took Bradley and Brewer into custody. As they were taking Bradley into custody, officers saw her place several capsules down the front of her pants.  After being transported to the jail, a female jailer removed some of the capsules that Bradley had placed in her pants, but others had started to dissolve inside her vagina. Concerned that the capsules might contain fentanyl, officers took Bradley to a hospital for medical care.

The next day, after being discharged from the hospital, Bradley was returned to the jail for questioning.  Bradley was interviewed by Detective Burton and Detective James Briggs in the interview room of the detective bureau. The videotape of the interview was introduced as Government's exhibit one and a portion of it was played for the court.

In the video, Bradley is brought into the interview room at about 9:03 a.m., she is seen being questioned by the detectives.  At the start of the interview Bradley was asked if she was

feeling okay and she said that she was. Then, she was given a form setting out her *Miranda* rights and was told that she was to read the form and initial each one of her rights. When Bradley reached the section regarding the right to counsel, Bradley stated, "I mean, I don't have a lawyer." Detective Burton responded that they would get her a lawyer if she wanted one and Bradley responded, "I guess that would be a good idea, I have never been in trouble like this." Then, for several minutes Bradley asks questions about her rights and the detectives told Bradley that she could stop talking at any time, even after signing the form waiving her rights. At one point Bradley seems confused about whether waiving her rights meant that she could not later assert her right to stop talking. The detectives again told her that she did not have to speak with them and if she did, she could stop at any time. At approximately 9:15 one of the detectives tells Bradley that she needs to print her name and sign her name saying that she understands her rights and wants to talk to detectives. At that point, Bradley says, "waiving my rights just sounds bad." Then at about 9:20 Bradley signs the form and agrees to speak with officers.

## CONCLUSIONS OF LAW

### I.     Motion to Suppress Statements

Bradley seeks suppression of the statements made during the post arrest interview. She maintains that she invoked her right to have an attorney present and to remain silent. She also contends any subsequent waiver of her rights was not voluntary, knowing or intelligent.

In *Miranda v. Arizona*, the United States Supreme Court provided "concrete constitutional guidelines" for law enforcement agencies and courts that the admissibility in evidence of statements given during a custodial interrogation was dependent upon whether the police provided the suspect with the following four warnings: (1) right to remain silent; (2) anything suspect says can be used against him in a court of law; (3) right to have an attorney

3

present; and (4) if the suspect cannot afford an attorney, one will be appointed for him prior to questioning. *Dickerson v. United States*, 530 U.S. 428, 435 (2000) (citing *Miranda v. Arizona*, 384 U.S. 436, 479 (1966)). "Confessions remain a proper element in law enforcement. Any statement given freely and voluntarily without any compelling influence, is of course, admissible in evidence." *Illinois v. Perkins*, 496 U.S. 292, 297 (1990).

### A. Right to Counsel

Here, it is undisputed that Bradley was in custody and being interrogated by law enforcement officers. The issue is whether she made an unambiguous request for an attorney. The videotape shows that when Bradley was made aware of her right to have any attorney, she stated, "I guess that would be a good idea, I've never really been in trouble like this."

The prosecution cannot use statements "whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *Miranda*, 384 U.S. at 444. "If the individual states that he wants an attorney, the interrogation must cease until an attorney is present." *Id.* at 474. The defendant's request to have an attorney present must be clear and unambiguous so that "a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." *Davis v. United States*, 512 U.S. 452, 459 (1994). "*Miranda* warnings are required for official interrogations only where a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Leviston v. Black*, 843 F.2d 302, 304 (8th Cir. 1988). "Interrogation refers not only to express questioning but also to any words or actions on the part of the police that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Holman v. Kemna*, 212 F.3d 413, 418 (8th Cir. 2000).

4

Bradley's statements regarding an attorney were not a clear and unambiguous request for counsel.  The U.S. Supreme Court has found that a defendant's statement "Maybe I should talk to a lawyer" was not a request for counsel.  *Davis*, 512 U.S. at 462.  The Eighth Circuit has also held that statements similar to Bradley's were not requests for counsel that required the law enforcement officer to cease questioning.  *See United States v. Mohr*, 772 F.3d 1143, 1146 (8th Cir. 2014) (defendant's statements of "Should I get a lawyer at this time? … I think I should get one" and "I want my lawyer .. If you want this recorded, I want a lawyer present" were not unambiguous requests for counsel); *United States v. Havlik*, 710 F.3d 818, 821-22 (8th Cir. 2013) (defendant's statements "I don't have a lawyer.  I guess I need to get one, don't I?" and "I guess you better get me a lawyer then" were not unambiguous or unequivocal requests for counsel); *Dormire*, 249 F.3d at 804 (defendant's statement, "Could I call my lawyer?" was not a clear statement that he was requesting counsel rather than asking whether he had the right to call one).  Based on the binding legal authority as summarized above, Bradley's statement, "I guess that would be a good idea," did not rise to the level of an unequivocal, unambiguous request for counsel.

**B.  Waiver of Rights**

Bradley also contends that although she signed the waiver of Miranda rights form, she did not knowingly, voluntarily, or intelligently waive her Miranda rights because she was confused about the form.  "A waiver of the Fifth Amendment privilege against self-incrimination is valid only if it is made voluntarily, knowingly, and intelligently."  *U.S. v. Syslo*, 303 F.3d 860, 865 (8th Cir. 2002) (citing *Miranda v. Arizona,* 384 U.S. at 444).  A waiver is knowing if it is "made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it."  *Id.*  (citing *Moran v. Burbine,* 475 U.S. 412, 421

5

(1986)). It is voluntary if it is "the product of a free and deliberate choice rather than intimidation, coercion, or deception." *Id.* (citing *Moran*, 475 U.S. at 421). Courts must examine the totality of the circumstances surrounding the interrogation to determine if the waiver was the product of a "free and deliberate" choice. *Syslo*, 303 F.3d at 865. "A statement is involuntary when it was extracted by threats, violence, or express or implied promises sufficient to overbear the defendant's will and critically impair his capacity for self-determination." *Simmons v. Bowersox*, 235 F.3d 1124, 1133 (8th Cir. 2001) (citing *United States v. Pierce*, 152 F.3d 808, 812 (8th Cir. 1998)). "In applying this test, courts look at the conduct of law enforcement officials and the defendant's capacity to resist any pressure." *Simmons*, 235 F.3d at 1133. Specifically, the court should evaluate factors including detention length, the repetitive and prolonged nature of questioning, and the accused's age. *Id*. (quoting *Bramlett v. Lockhart*, 876 F.2d 644, 646 (8th Cir.1989)).

In the present case, the questioning took place the day after Bradley was arrested. She had received medical treatment the night before questioning, but told the detectives she was feeling fine before questioning began. Bradley was 23 years old and a high school graduate. In the video, she does not appear to be under the influence of drugs. The detectives hand Bradley the waiver of rights form at the beginning of the interview and Bradley asks several questions about her rights, specifically the right to counsel. She also repeatedly asks about what it means to waive her rights. The detectives answer her questions and explain that even after signing the waiver form, she could stop talking to them at any time.

Bradley claims that she did not voluntarily waive her rights because about 12 minutes into the interview, one of the detectives stated, "what we need you to do is to print your name and sign your name saying that you understand these rights and that you want to talk to us." He

6

then said it is just to "cover [his] butt." Shortly thereafter, Bradley explained, "waiving my rights just sounds bad." Bradley then signed the waiver form and gave statements to the detectives. "The mere fact that an officer may have elicited a confession through a variety of tactics, including…making false promises, playing on a suspect's emotions…deceiving a suspect, conveying sympathy, and event using raised voices does not render a confession involuntary…" United States v. Boslau, 632 F.3d 422, 428 (8th Cir. 2011).

Here, Bradley asked several questions about the waiver form and stated that waiving her rights "sounds bad", however, the undersigned finds that under the totality of the circumstances, Bradley's waiver was a free and deliberate choice and her statements should not be suppressed.

Accordingly,

**IT IS HEREBY RECOMMENDED** that Defendant's Motion to Suppress Statements [Doc. 40] should be **DENIED** as set forth above.

The parties are advised that they have fourteen (14) days in which to file written objections to this report and recommendation pursuant to 28 U.S.C. § 636(b)(1). Failure to timely file objections may result in a waiver of the right to appeal questions of fact.

NANNETTE A. BAKER
UNITED STATES MAGISTRATE JUDGE

Dated this 10th day of December, 2018.